In the Matter of Vogue Pleating & Embroidery Co., Inc. Abraham H. Geffner, Appellant; Abraham G. Landau et al., Respondents.

First Department, October 25, 1960.

*George M. Aronwald* for appellant.

*Joseph Liff* of counsel (*Jay R. Handwerger* with him on the brief; *Gordon, Brady, Caffrey & Keller,* attorneys), for Abraham G. Landau, respondent.

*Per Curiam.* On or about September 23, 1958 an assignment was made for the benefit of creditors of Vogue Pleating & Embroidery Co. Inc. During the course of the administration of the assigned estate, a public auction was had pursuant to an order authorizing a sale of the assets of the assignor. The property sold brought a gross amount of $22,520.19. The auctioneer, one of the respondents in this appeal, remitted the sum of $19,334.69, having deducted commissions in an amount of $2,252.02 and the sum of $933.48 for expenses of the sale.

Subsequent to this remittance the assignee moved, through an order to show cause, to compel the auctioneer to make a report of the sale and also asked that the court fix the amount which the auctioneer be permitted to retain for his fees and disbursements. The court held the motion in abeyance pending the report of a Referee who was designated by the court to take testimony and to report with respect to the issues raised by the motion. The report of the Referee, in effect, sustained the position of the auctioneer and recommended that he be permitted to retain the amounts deducted by him — both by way of fees and expenses. A motion was then made by the assignee to disaffirm the Referee's report. By way of cross relief, the auctioneer, one of the respondents herein, urged its confirmation. The court confirmed and entered an order granting to the auctioneer the full amount deducted for fees and expenses; ordered the sum of $213 be paid for the transcript of the hearings; granted the Referee the sum of $500 for the services rendered by him and ordered the assignee to pay to counsel for

the auctioneer the sum of. $250 for counsel fees and disbursements of such attorneys. It is this order which is the subject of this appeal.

It is the obligation of the court in the administration of an assigned estate to carefully scrutinize the costs of such administration. The estate is a trust fund for the benefit of creditors and it is not created for the purpose of dissipation. It becomes the court's duty to carefully pass upon each item of disbursement to see that the estate is administered economically and efficiently. To accomplish that purpose the court is given broad powers. Section 20 of the Debtor and Creditor Law provides that " the court shall have full jurisdiction to do all and every act relating to the assigned estate ". These powers should be exercised.

At the outset we note that although the gross receipts of this sale amounted to slightly in excess of $22,000 the amount in controversy was less than $2,000. The cost of this reference, if the order of Special Term be affirmed, would be $963 or about 50% of the amount in controversy. It would seem that no reference involving such cost was warranted considering the amount involved. The issues were not so complex as would have cast too great a burden on the court to take the required testimony itself. If, however, the court felt a reference necessary, then, in the interests of protecting the assets of this estate, it should have designated an Official Referee rather than a private Referee with so large a foreseeable expenditure. In commenting upon the propriety of appointing referees, we have heretofore said: " it is the general policy of the courts in this department not to extend the scope or occasion of references, in the absence of request or consent of the parties, or of special circumstances meriting such action." (*Matter of Wilder* [*Straus-Duparquet*], 5 A D 2d 1, 3.)

True, there was no objection taken by either party to the interlocutory order appointing the Referee. However, that does not prevent this court, which also shares the responsibility to protect assigned estates, from at this time passing upon the necessity for such reference. The final order entered herein opens the record for this court's examination. While we might be able to void the appointment we do not give consideration to doing so here. We will, however, not hesitate to do so in the future where it is obvious that the appointment of a referee is improper. We suggest that when a court appoints a private referee in an inappropriate case — whether because the court is not acquainted with the facts or for any other reason — it becomes the duty of the parties to request the court to consider

the advisability of taking the testimony itself or of appointing an Official Referee.

In support of his claim for the commissions deducted the auctioneer relied upon an alleged agreement made between him and the assignee. Assuming there were such agreement, the court is not bound by that agreement if it finds it to be unconscionable. The respondent so concedes. Section 21 of the Debtor and Creditor Law provides that: " [t]he actual and necessary expenses incurred by the assignee in the administration of the estate shall be  *  *  *  examined and approved or disapproved by the court." That imposes an obligation upon the court to do exactly what the statute provides and in so doing it gives the court the power to disapprove any disbursements in connection with the administration of the estate found to be improper. That includes the fees paid or to be paid to the auctioneer. The fees and disbursements sought to be sustained amount to over 14% of the gross receipts of the sale. We believe them to be entirely out of proportion to the amount realized and find them to be excessive and we must therefore modify the amounts allowed. It is urged that in New York County as distinguished from other counties or judicial subdivisions of the State, the custom is to pay 10% of gross receipts as the auctioneer's fee. If that has been the custom it is time for the court to see to it that it is no longer followed. A fixed fee of 10% in every case without regard to the particular and individual circumstances we hold to be improper. We conclude that 7% of the proceeds of sale is a fair award to the auctioneer for his services in this case. In coming to that conclusion we have taken into consideration the fact that the sale was successful beyond the anticipation of the parties. Such success is reflected, however, in the auctioneer's fee being fixed on a percentage basis. Accordingly, we find that the auctioneer's fee should be fixed in the amount of $1,576.41.

After having examined the items claimed for disbursements, we conclude them to be excessive and sustain the objections of the assignee. We find that the auctioneer is entitled to no more than the sum of $580.20.

Special Term awarded to counsel for the auctioneer a fee of $250. Whether an attorney for a creditor is entitled to counsel fee in a proceeding of this nature is open to question. Section 21 of the Debtor and Creditor Law provides that the court " may in its discretion award reasonable counsel fees and costs " in a trial before a referee. It does not specifically provide, however, that such counsel fee may be awarded to an attorney for a creditor of the assignor or of the assigned estate. It has been

held, however (*Matter of Mayer,* 108 Misc. 662), that section 21 does give power to the court in its discretion to award counsel fees to an attorney for a creditor. However, that decision was written in circumstances where the creditor performed services that inured to the benefit of the estate. Assuming, however, that such power does exist, we do not consider that discretion should be exercised in favor of granting the attorneys for the auctioneer a counsel fee in this case. They represented the creditor alone. Their services were rendered on behalf of nobody but the creditor and there was no gain to the estate through the rendition of such services. Accordingly, the award of $250 to such counsel should be stricken.

The sum of $213 for stenographic fees, of course, must be paid.

An allowance of $500 was given to the Referee for the services rendered by him. Perhaps if we were to consider only the time spent by the Referee, such an award would be proper. But we must also consider the amount in issue. The $500 awarded amounts to about 25% of the sum contested. In the circumstances his fee should be reduced to $250.

The cost of the reference, namely, the Referee's fees and stenographic fees should be borne equally between the parties.

The order appealed from should be modified on the law, on the facts and in the exercise of discretion in conformance with this opinion and as so modified affirmed, with costs to the appellant. Settle order.

BREITEL, J. P., RABIN, VALENTE, MCNALLY and BASTOW, JJ., concur.

Order, entered October 8, 1959, confirming the report of the Referee, fixing the autioneer's commissions at $2,252.02 and his disbursements at $933.48, and directing the assignee to pay $213 for the transcript of hearings before the Referee, $500 to the Referee and $250 to the attorneys for the auctioneer, unanimously modified, on the law, on the facts and in the exercise of discretion in conformance with the opinion herein and, as so modified, affirmed, with $20 costs and disbursements to the appellant. Settle order on notice.